## NATIONAL SURETY CO. v. GALLEMORE.

No. 12687—Opinion Filed April 29, 1924.

Rehearing Denied June 3, 1924.

**1. Insurance—Fidelity Policy—Construction — Breach of Warranty — Burden of Proof.**

Contracts of fidelity insurance will be liberally construed to accomplish the purpose of indemnity for which they are made, and, where the defense is a breach of the warranty by the insured, the burden of proof rests upon the insurer to establish the allegations charging such breach.

**2. Same—Judgment Sustained.**

Record examined, and held, the judgment of the trial court is amply supported by the evidence.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Ottawa County; S. C. Fullerton, Judge.

Action by N. C. Gallemore against the National Surety Company. From a judgment in favor of the plaintiff, defendant brings error. Affirmed.

N. B. Maxey and W. R. Withington, for plaintiff in error.

Kornegay & Probasco, for defendant in error.

Opinion by PINKHAM, C. This action was brought on a policy of insurance issued by the National Surety Company, plaintiff in error, to the First State Bank of Bernice, Okla., by which the National Surety Company agreed to indemnify the First National Bank of Bernice against any loss not exceeding $5,000, which said bank might sustain by reason of any act of larceny or embezzlement of one John F. Hamilton, who was then and there employed as the cashier of said First State Bank of Bernice.

After a right of action had accrued the

plaintiff acquired the claim of the said bank of Bernice and brought this action thereon.

The parties will be referred to as they appeared in the trial court.

The plaintiff, in his petition, averred that the First State Bank of Bernice had in all things complied with the terms and provisions of said bond and had performed all things then provided to be performed on its part.

Defendant, in its answer, admitted the execution of the bond, but denied liability thereon for the reason that said bank wholly failed to comply with the conditions and requirements set out in said bond.

The case was tried before a jury and resulted in a verdict for the plaintiff in the sum of $3,432.61, with interest at 6 per cent. per annum from February 13, 1920. Motion for new trial was heard and overruled and excepted to by defendant. Judgment was rendered in favor of the plaintiff and against the defendant on the verdict of the jury and excepted to by the defendant. The case comes regularly on appeal to this court.

A number of assignments of error are set out in the petition in error and in the brief of defendant.

The first proposition presented and discussed in defendant's brief is that:

"The burden was upon the plaintiff below to prove compliance with all of the conditions precedent in the bond and employer's statement, failing in which the trial court should have directed a verdict for defendant."

Under this proposition it is contended, first, that the burden was upon the defendant in error to prove compliance with the conditions precedent in the employer's statement as well as in the bond, and that the plaintiff failed to do so by failing to show compliance with certain warranties in the employer's statement; second, that the defendant in error failed to give immediate notice of acts coming to his knowledge which would give rise to a claim under the bond; and, third, that the proof showed conclusively that the defendant in error failed to give an itemized statement of loss within 60 days from the date that it had notice of loss under the policy.

It is insisted that there was a failure of the plaintiff to prove in each of these respects that it was entitled to recover and that therefore the court should have sustained the defendant's demurrer to the evidence and its motion for an instructed verdict.

The policy was issued upon a declaration signed by the assured and contained statements in the form of answers to questions. The policy provided, among other things, that:

"All statements which the employer has furnished concerning the employe or his duties or accounts are warranted by the employer to be true and if any statement be false or untrue this obligation shall be null and void and of no effect from the beginning."

The questions propounded by the surety company and the employer's answers necessary to be considered were as follows:

"How many employes are there in the bank besides above named employe, and what are their respective positions? None.

"Is the employe permitted to make loans or allow overdrafts or discounts without consulting the president or the vice-president? If permitted to do so, please state under what limitations. No.

"To whom does employe report loans, overdrafts, and discounts, and how often? To president about once a month.

"Do the directors meet at least monthly? If not, how often? Supposed to meet every month. Are all loans, overdrafts and discounts made in the interval spread upon the minutes of such meetings, and examined and approved by the directors? If not, will this hereafter be done? Yes.

"Is the president or the vice-president in daily attendance at the bank? No.

"How often are the accounts of the employe audited, and the cash, notes, and other securities claimed to be on hand verified? About every thirty days.

"By whom? President.

"How often are depositors' pass-books balanced? About once a month."

On the question of burden of proof in cases of this character, this court, in the case of Southern Surety Co. v. Tyler & Simpson Co., 30 Okla. 116, 120 Pac. 936, announced the rule in the fifth paragraph of the syllabus that:

"Contracts of fidelity insurance will be liberally construed to accomplish the purpose of indemnity for which they are made, and where the defense is a breach of the warranty of the insured, the burden of proof rests upon the insurer to establish the allegations charging such breach."

In the body of the opinion in the case cited it is said:

"It is urged by counsel for plaintiff in error that the promises and agreements on the part of the insured to exercise and maintain over the employe such a super-

vision as contemplated in the bond of indemnity was not observed; hence, there has been a breach of the bond on the part of the insured. Unless there was a substantial compliance with these undertakings the conclusion urged by counsel would probably be true. However, in such breach the burden of proof would rest on the insurer;" citing cases.

In the case of Title Guaranty & Insurance Co. v. Nichols, 224 U. S. 346, it is said in the first paragraph of the syllabus:

"While liability under a surety bond for honesty of an employe would be defeated if loss was due to neglect of the employer to take the precautions required by the bond the condition is subsequent and not for averment in respect thereto; it is a matter of defense which must come from the other side upon whom the onus rests."

In this case it is sufficient to say the plaintiff was clearly entitled to recover upon proving the bond, and embezzlement or larceny, and a breach by a refusal on the part of the surety company to indemnify.

It is further contended that the cashier, Hamilton, was permitted to make loans without consulting the president or the vice-president, contrary to the promise contained in the statement; that the directors of the bank did not meet every month; that the loans, overdrafts, and discounts were not spread upon the minutes and examined and approved by the directors in their regular meetings; that the accounts of Hamilton were not audited and the cash, notes, and other securities claimed to be on hand were not verified; and that depositors' passbooks were not balanced in accordance with the promise made in the said statement.

The record clearly discloses that the cashier, Hamilton, was short in his account, and that to cover the shortage he made false entries in the books.

We have carefully examined the entire record in this case and we are clearly of the opinion that there was a substantial compliance with the terms and conditions of the bond on the part of the plaintiff. The procedure followed in examining the accounts of Hamilton, the cashier, appear to have been substantially in accordance with the terms of the statement.

The evidence shows that first a state examiner visited the bank and discovered part of the shortage, filing his report with respect to the same; that thereupon notice was given to the defendant company; that the adjuster of the defendant came and according to the testimony of Mr. Gallemore, president of the bank, they agreed to get an expert accountant and that the company would settle by his report.

As soon as the report of the private accountant was obtained it was forwarded with an affidavit as to the items of shortage as disclosed by the audit. It does not appear that any objection was raised to the proof of loss or the method of accounting arrived at by the expert.

The books were offered to the company; it would seem that everything was done which the defendant required even to having Mr. Gallemore, the president, make criminal complaint against the cashier on the request of the defendant.

The words of the bond are to be construed liberally in favor of the insured, and not given a technical or strained construction in order that the purpose of the bond may be defeated and the undertaking of the parties rendered nugatory. (Southern Surety Co. v. Tyler & Simpson Co., supra.)

A number of cases are cited in defendant's brief which have been carefully examined, but we find nothing in the authorities referred to in direct conflict with the rule announced by the decisions of our own court in a case such as is disclosed by the record before us.

It is sufficient to say that aside from the defalcation of the cashier the burden of proof, in view of the issues made by the pleadings, rested upon the defendant, and the falsity of the promissory warranties must be established by the defendant.

The second proposition discussed in defendant's brief is that, "The admission of incompetent evidence prejudicial to the party objecting is reversible error."

It appears from an examination of the record that at the time the bank was taken over and Mr. Hamilton, the cashier, was checked up, a deputy state examiner looked into the matter and found Mr. Hamilton short about $2,900; that Mr. Hamilton made no satisfactory effort to ascertain the correctness of the report, or to explain it, but at his request, which was agreed to by a representative of the bank and a representative of the National Surety Company, plaintiff in error, a private auditor was employed, Arthur Young & Co., of Kansas City, Mo.

The Arthur Young Comany with the knowledge and consent of all the parties, made a report of the condition of the bank during the incumbency of Mr. Hamilton as cashier, which report was identified by the inspector of the defendant in the trial of the case.

In view of these facts we think the objection of plaintiff in error to the introduction of said report was properly overruled.

The further contention is made that said report contained statements of Mr. Hamilton to the representative of the Arthur Young Company and that the court erred in refusing to strike out of the report these statements and admissions of Hamilton on the request of the defendant; but in view of the fact that the record discloses that Hamilton desired the Arthur Young Company to make an audit of the accounts of the bank and made certain statements with reference to his accounts to the auditor making the examination, we think the court did not err in admitting the said report in its entirety. Furthermore, we are clearly of the opinion that there was ample evidence to sustain the verdict of the jury if the report had contained no mention of any statements made by Hamilton to the said auditor.

Mr. Gallemore, president of the bank, testified that the inspector of the defendant, who had charge of the matter, agreed to abide by the report, and it was produced from the files of plaintiff in error at the trial of the case.

It is next contended that the court erred in giving certain instructions (No. 5 and No. 6).

We have examined the instructions complained of and are of the opinion that they were applicable to the case.

Instruction No. 5 was to the effect that if the jury found and believed from the evidence that the First State Bank of Bernice did not sustain a loss by reason of any act of larceny or embezzlement of John F. Hamilton as cashier, committed between the 15th day of October, 1923, and the 2nd day of September, 1919, and that said bank performed and complied with all of the conditions precedent, as set out in the bond of suretyship, admitted by the pleadings to have been furnished to said bank by said John F. Hamilton as principal, and the National Surety Company, defendant herein, as surety, the verdict should be in favor of the plaintiff; and in instruction No. 6 the court told the jury, in effect, that if on the other hand they did not believe from the evidence that said bank did sustain a loss by reason of an act of larceny or embezzzlement of said Hamilton, committed at the time and in the manner set forth in instruction No. 5, or that said bank failed, neglected, or omitted to substantially comply with and perform any one or more of the conditions precedent to the recovery as set out in the

bond of suretyship and in the preceding instruction their verdict should be in favor of the defendant.

We think it is sufficient to say that there was no material issue raised by the evidence on the questions which it is urged should have been covered by the instructions complained of.

It is also contended that the court erred in permitting defendant in error, N. C. Gallemore, the president of the bank, to testify in regard to the custom of banks in balancing the pass-books. The argument is that in its application for a bond in answer to the question, "How often are depositors' pass-books balanced?" the answer was, "About once a month," and such was the testimony of the president of the bank, who stated "that was the usual custom."

We perceive no error in the admission of such testimony.

From an examination of the entire record we conclude that there was no error affecting the substantial rights of the defendant committed by the court.

For the reasons stated, we think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.