### TERRY et al. v. WATER IMPROVEMENT DIST. NO. 5.

No. 25244.    Feb. 2, 1937.

Mason, Williams & French, for plaintiffs in error.

Geo. B. Schwabe, for defendant in error.

WELCH, J. The plaintiff had in its employ one Terry who had charge of collecting water bills and assessments for plaintiff, and it was his duty to account for and pay over to plaintiff all such collections.

The defendant indemnity company, for the required consideration or premium, had guaranteed the fidelity of the employee, binding itself to pay plaintiff such loss as plaintiff might sustain through larceny or embezzlement by Terry.

The employment of Terry terminated and an audit of his accounts showed a shortage of $2,904.90, which was immediately called to the attention of the defendant indemnity company. After rechecking of the audit and demand and refusal to pay, this suit was brought, and resulted in judgment for the plaintiff for the amount of the shortage.

For reversal of that judgment, the defendant first asserts that it was not shown that this loss was sustained through larceny or embezzlement of Terry, and therefore plaintiff is not entitled to recover.

The shortage in the above sum came to light near the 1st of October, 1932. It is not seriously disputed that the money came into the office of the employee Terry, and that the shortage in that sum was an existing fact. It was clearly shown that in September of that year Terry made a false book entry of $2,600 in an effort to temporarily balance the shortage, and another entry or credit of $100 purported to have been authorized by the board of plaintiff, which was never so authorized in any manner, and also that he carried on hand as cash a certain worthless check for $204.09, not dated, signed by a concern in which Terry was interested, drawn upon a bank account which was nonexistent or wholly without funds and which check apparently had been substituted for money of the plaintiff, or was carried as partial concealment or balance of the shortage. The exact method or manner of the abstracting or withdrawing of the funds was apparently not susceptible of proof. The employee Terry could not and did not deny the shortage, though he did deny having taken the money or any part of it, and stated that he received no benefit from it personally, or that if he did receive any benefit from it, he did not know it. He fur-

ther testified that certain other persons might have at times had access to his cash box. However, the trial court observed his demeanor on the stand and heard his testimony, and in view of the physical facts and the facts and circumstances clearly established, we cannot say that the conclusion of the trial court that the loss was occasioned through the embezzlement of Terry is unsupported by the evidence. Upon the contrary, it appears that this conclusion found abundant support in the evidence.

In 9 R. C. L. 1264, this general rule is stated:

"Embezzlement is not an offense at common law, but is the creature of statute. The enactments differ widely in their scope both as to the persons made liable and the nature of the property protected. No single definition can, therefore, be given which would be broad enough to cover the offense as it is variously described. In general, embezzlement may be defined as the fraudulent conversion of another's personal property by one to whom it has been intrusted, with the intention of depriving the owner thereof, the gist of the offense being usually the violation of relations of a fiduciary character."

In 9 R. C. L. 1275-1276, we observe this text:

"Conversion, as the necessary element of the offense of embezzlement, is the fraudulent appropriation of another's property to one's own use, but while there must be a conversion, this may be either actual or constructive. The statutes usually provide that the conversion of the property of another must be 'to one's own use', and in several jurisdictions it is also stipulated that it may be 'to the use of another.' To appropriate 'to one's own use' does not necessarily mean to one's personal advantage. Every attempt by one person to dispose of the goods of another, without right, as if they were his own, is a conversion to his own use. * * *"

In section 2041, O. S. 1931, it is provided as follows:

"If any person, being an officer, director, trustee, clerk, servant or agent of any association, society or corporation, public or private, fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust any property which he had in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, he is guilty of embezzlement."

Section 7761, O. S. 1931, provides in part as follows:

"If any county treasurer, or other officer or person charged with the collection, receipt, safekeeping, transfer or disbursement of the public money, or any part thereof, belonging to the state or to any county, precinct, district, city, town or school district of the state shall convert to his own use or to the use of any other person, body corporate or other association, in any way whatever, any of such public money, or any other funds, property, bonds, securities, assets or effects of any kind received, controlled or held by such officer or person by virtue of such office or public trust for safekeeping, transfer or disbursement, or in any other way or manner, or for any other purpose; * * * or if any person shall advise, aid, or in any manner knowingly participate in such act, such county treasurer or other officer or person shall be deemed guilty of an embezzlement of so much of said money or other property, as aforesaid, as shall be converted, used, invested, loaned or paid out as aforesaid."

In general it may be said that each case of shortage or failure to account for money by one in a fiduciary capacity must stand upon its own foundation and be adjudged by its own particular facts as to whether or not there is such defalcation or misappropriation as to constitute embezzlement.

In Oklahoma Sash & Door Co. v. American Bonding Co., 67 Okla. 244, 153 P. 1151, which was an action predicated upon a similar fidelity bond, this court held that allegations of the collection and receipt of money followed by failure to account for and turn over the same, resulting in defalcation of the amount of the shortage, was sufficient to allege embezzlement as intended by the parties in the contract stated in the bond; and in Griffin v. Zuber (Tex. Civ. App.) 113 S. W. 961, it was held that a postmaster failing to account for money orders and postage stamps was guilty of embezzlement as defined by the laws of the United States, so as to hold the surety company liable under its bond to replace losses sustained by reason of larceny or embezzlement.

In the annotation found at 16 A. L. R. 1494, it is said:

"It has been held that an employee engaged in the collection or receiving of money belonging to his employer, who fails to account for the money so collected or received, is guilty of larceny or embezzlement within the meaning of a fidelity bond." Citing decisions from numerous states.

Upon the other hand, our attention is directed to many cases where the circumstances do not justify any conclusion of embezzlement, as where the situation merely created the relation of debtor and creditor

between employer and employee, or created a civil liability as against the employee, or where items of property were under the care of the employee and were stolen or disappeared without the knowledge, and in spite of the care and prudence of the employee. We deem it unnecessary to lengthen this opinion by extended reference to such or similar cases cited by the defendant indemnity company, wherein the fact situation is not sufficiently similar to make them directly applicable here.

While it is true a fidelity bond conditioned to indemnify the employer against larceny or embezzlement by the bonded employee does not cover acts of mere negligence or bad judgment of the employee in cases where he is authorized to act upon his judgment, and while there are many cases wherein loss experienced by an employer through his employee under the existing facts did not amount to embezzlement, yet, when we apply the general rule to the facts here shown, we find no difficulty in concluding that the trial court's conclusion is supported by the evidence.

The defendant indemnity company next asserts that the plaintiff's claim was presented too late to fix liability for any loss sustained by embezzlement before June 18, 1932, and that plaintiff's loss, if any, was all sustained prior to that date, except the sum of $347.28, which defendant asserts was the largest sum which could possibly be fixed as having been lost after June 18, 1932.

This was a continuing bond, the anniversary date being June 18, 1932. The bond contained provision No. 8, as follows:

"Any claim hereunder must be made within three (3) months after the termination of the suretyship for any employee, and within three (3) months after the date of expiration of each and every period of twelve (12) months from the beginning of the suretyship for any employee, during the continuance of this bond, as to the acts of defaults of said employee committed during any such period of twelve (12) months."

This shortage was not discovered until more than three months after June 18, 1932, and of course no claim was presented within that three-month period. The defendant indemnity company contends that such provision should be held to bar all claims for any shortage not discovered and claimed within the twelve-months period preceding June 18th, or within three months thereafter, as was apparently held in Hartford Accident & Indemnity Company v. Neiman-Marcus Co. (Tex. Com. of App. 1926) 285 S. W. 603, while the plaintiff contends that this provision of the bond, when read in connection with the other terms and provisions of the bond, is too indefinite and uncertain to advise the employer that his claim would be barred unless discovered and claimed within the twelve-months period, or the next three months thereafter. That contention was apparently upheld in the subsequent decision of the Supreme Court of Kansas in First National Bank of Lewis v. Hartford Accident & Indemnity Company, 252 P. 199. Thereafter the United States Circuit Court of Appeals from the 4th Circuit considered similar contentions and observed the conflicting decisions in Texas and in Kansas, and concluded that the Kansas decision should be followed. See Hartford Accident & Indemnity Co. v. Tabler, 44 Fed. (2d) 780. In the federal decision it was said:

"In our view the assured was not told with sufficient clearness in the contract that the liability of the surety as to each year of the bond expired within three months after the end of the year in the absence of any claim upon the surety; and that after the expiration of the three-month period, the assured had no protection for existing defaults which it had not discovered. It was of course to the interest of both parties that diligence be constantly exercised to ascertain whether the employees had been honest in the performance of their duties; but this precaution might have been taken with greater care if the employer had been told in unmistakable terms that neglect was likely to be followed by loss of substantial protection under the bond. Confessedly the meaning of the terms employed is open to debate, and we think that it would be unreasonable under the circumstances to adopt the surety's interpretation."

These three decisions considered a bond provision more similar to the one here under consideration than any other case brought to our attention, and the conclusion reached in the Kansas decision and the federal decision seem the more persuasive to us. And this is especially true when we observe from the Texas decision relied upon by the indemnity company that the conclusion there reached was based upon the conclusion of the Supreme Court of Pennsylvania in Larrabee v. Surety Co., 250 Pa. 135. In the Pennsylvania case the bond contained the express provision that the company should make good such loss as should be committed during the continuance of the term of the bond or any renewal thereof, "and discovered during said continuance, or within three months thereafter," etc.

We need not base our determination here necessarily upon the exact question of the construction of this provision in the bond, since the trial court here found that the embezzlement by Terry which resulted in plaintiff's loss did in fact occur after June 18, 1932. While the defendant indemnity company insists that such finding is unsupported by competent evidence, we are not strongly persuaded to adopt that view. The shortage, as above stated, came to light in October, 1932; so far as the record shows, no one knew exactly when the money was taken. The employee made some effort to have it appear that it was probably taken when he was absent from his office, probably in August, 1932. It was his claim that he discovered the shortage about the middle of the calendar year of 1932. He made the false entries to balance the books to conceal the shortage apparently in September, 1932, and it was in October, 1932, when he failed and refused to account for the money, that his defalcation became a finally fixed fact. When the actual peculations occurred is not shown, it is true. The testimony of Terry, who had charge of the money, is somewhat vague and indefinite, but from all the facts and circumstances the trial court concluded that the embezzlement occurred after June 18, 1932, and we cannot say that such finding is unsupported by competent evidence. This case was tried to the court upon the express waiver of the jury. In such cases it is settled by many decisions that the finding of fact of the trial court will not be disturbed if supported by competent evidence reasonably tending to support the decision reached.

We find that the facts shown, together with reasonable inferences arising therefrom, justify the trial court's decision, and the judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and HURST, JJ., concur.