Alice M. GENTRY, d/b/a A & G TV and Appliances, Plaintiff in Error,

v.

Lloyd SMITH and Pauline Smith, Defendants in Error.

No. 39679.

Supreme Court of Oklahoma.

June 26, 1962.

Ranel Hanson, Oklahoma City, for plaintiff in error.

John H. Porter, and James W. Flinn, Oklahoma City, for defendants in error.

BLACKBIRD, Vice Chief Justice.

This action is the result of a controversy which arose between plaintiff in error (hereinafter referred to as plaintiff) and the married couple appearing here as defendants in error, after the latter had attempted to obtain, from their insurance carrier, settlement, on a "total loss" basis, of their claim of storm damage to two 1959 model Philco air conditioners, of the type placed in windows (sometimes referred to as "room air conditioners", or "window units"), which defendants in error had previously purchased for $569.00 and caused to be installed in their residence during August, 1959, before being damaged by hail in April, 1960. After the hail storm, the defendant in error Mrs. Pauline Smith telephoned the couple's insurance agent, Duffner, about the damage to the air conditioners, and thereafter defendants in error (hereinafter referred to as defendants) received a post card from Acme Adjustment Company requesting them to obtain an estimate from a reputable dealer as to the amount the air conditioners had been damaged. It was in the early part of May, 1960, that Mrs. Smith telephoned plaintiff's store, and/or shop, to obtain such an estimate. Pursuant to her said call, plaintiff's manager, Mr. Gentry, accompanied by plaintiff's service manager, Bill Smith, went to defendants' home to look at the air conditioners. After Bill Smith had inspected them, one of which was a two-ton unit in a window of defendants' dining room, and the other a one-ton unit in their bedroom, and Smith had ascertained that the coils in each conditioner had been battered "to a pulp" by the hail, and that they had been showered with broken glass from the windows, the two men returned to the store, figured the cost of repairing the air conditioners including replacement of their coils, and furnished defendants with a written estimate, in the amount of $175.95, as the price for which plaintiff would make the repairs. This estimate was then submitted to Acme Adjustment Company, whose adjuster, Wiley McNeil, thereafter reported the damage to the air conditioners to be somewhat less than plaintiff's estimate, and the "closing papers" on said claim were forwarded to the insurance company on or about June 2nd. However, apparently before the insurer paid defendants anything in satisfaction of their claims, and at some time after plaintiff had taken defendants' air conditioners out of their home, to its shop, to make the repairs, defendants learned from plaintiff's shop that there would be a delay of several months in its repairing of the damaged air conditioners, because of the necessity of obtaining, from the factory manufacturing them, some of the parts essential to the repairs. Because of this certain delay, and their anticipated need for air conditioning, be-

fore expiration of such a long waiting period, defendants requested that their insurance claim be reopened on a "total loss" basis, and a "supplemental claim" was apparently forwarded to the company to invoke reconsideration of defendant's case.

After plaintiff's manager, Mr. Gentry, was apprised by the defendant, Pauline Smith, that her husband, Lloyd, worked nights, therefore had to sleep days, and, in substance, that it was too hot for him to do this without air conditioning, plaintiff, through Gentry, caused a new 1960 model "two-ton", or "two-horse", air conditioner to be installed in defendants' dining room, and ordered a new one-ton conditioner for their bedroom. The date of installation of the two-ton unit is reasonably fixed by the evidence as July 1st or 2nd (1960). The defendants went out of town the next day, and did not return until approximately one week later. By that time plaintiff's store had received the new one-ton air conditioner ordered for defendants, and this was installed in their bedroom on Monday, July 11th. The next morning, defendants received a letter, dated July 12th, from Tom Tennery, who was acting as "storm supervisor" adjuster for defendants' insurance company, in which they were advised that, upon submission of their "supplemental claim" to said company, said claim was denied " * * * in as much as liability under the policy contract is limited to the repair as originally agreed." Defendants then took the letter to plaintiff's establishment and showed it to Gentry. According to their testimony, when the insurance company's final decision on their claim was thereby revealed to contemplate accepting liability only for the repair of defendants' older air conditioners, they asked Gentry to return them and take back the new ones. Gentry then stated that defendants would be liable to plaintiff for a "service charge." When Gentry proposed that defendants pay plaintiff for repairing the two older air conditioners, and, in addition pay the sum of $199.00, as the difference between their value (as thus repaired) and the retail price

of the new ones, and defendants would not assent to this proposal, Gentry telephoned plaintiff's lawyer. All negotiations were then terminated and thereafter plaintiff, alleging that defendants had agreed to buy the new air conditioners, instituted the present action to recover from defendants the sum of $654.50 as their combined price, plus court costs and such other further relief as the court might deem reasonable and just.

Defendants thereafter filed an answer in the form of a general denial, and, in a cross petition, sought recovery from plaintiff of the sum of $700.00, alleging, among other things, that plaintiff had installed the two 1960 model air conditioners in their home for their *free* use and benefit, pending its repair of their older ones.

At the trial before the court, after waiver of a jury, defendants testified in support of their position that plaintiff had installed the new air conditioners *as a volunteer*, and without their ever having made any unconditional promise, or agreement, to buy them. The tenor of their testimony was that plaintiff's only reason for considering defendants as purchasers of said new air conditioners was his confidence that defendants' insurance carrier would settle their claim for damages to their older ones on a "total loss" basis, and that such satisfaction of their claim would pay most, if not all, of the cost of the new ones. Mrs. Smith admitted telling Gentry that her husband had to sleep days, and in effect, that they could not be without air conditioners. She testified that she apprised him of the amount defendants had been advised that their insurance company would pay on plaintiff's estimate of the cost of repairing their old ones. She further testified that Gentry then expressed the opinion that defendants' insurer was " * * * just pushing you around and I will call them and get this case reopened." Mrs. Smith further quoted Gentry as saying: " * * * I have dealt with hundreds of insurance companies, and I know what to do." Mrs. Smith then testified: "So, we let him, we

thought he had had that damage, and he knew what he was doing."

After both plaintiff and defendants had rested, plaintiff demurred to defendants' evidence; but, when said demurrer was overruled, she presented in rebuttal to defendants' evidence, further evidence of her own; and the cause was submitted to the trial court for judgment, without said demurrer ever being renewed, or the sufficiency of the evidence as a whole (to establish defendants' defense and counterclaim) being challenged in any manner.

After the trial judge, at the close of the trial, had orally announced his finding that there was no meeting of the minds, or contract, between plaintiff and defendants for the sale of the new air conditioners, and had expressed his conclusion, in substance, that both parties were looking to defendants' insurer to pay for them, he announced it would be the court's judgment that defendants return the new air conditioners to plaintiff and pay plaintiff the sum of $75.00, together with the costs of the action, and that plaintiff return defendants' air conditioners to them. Counsel thereupon revealed to the court that plaintiff had sold defendants' one-ton air conditioner and therefore could not return it. Then the court continued the case to enable the attorneys to ascertain the value of said air conditioner. After the later hearing, and his reservation of judgment until January 13, 1961, the court, on that day (and on his own initiative) set aside his previous judgment, and entered a new one decreeing that defendants return the 1960 model two-ton air conditioner to plaintiff, at the latters' cost; that defendants recover the sum of $125.00 from plaintiff under their cross petition; and, he further decreed that, upon plaintiff's payment of the specified sum to defendants, they return to her the 1960 model one-ton air conditioner, at their own cost. The court further ordered that the parties share the costs of the action equally.

. Thereafter, plaintiff lodged the present appeal, and now urges reversal of the described judgment under two propositions.

The first of these deals with rescission of a contract, and is predicated on the premise that a contract for the sale of the air conditioners, by plaintiff to defendants, was entered into. By reference to certain portions of the evidence, plaintiff's counsel attempts to show that the various elements of an executed oral agreement between the parties existed in this case, and that defendants did not prove any valid, or statutory, ground for rescinding it.

■ Plaintiff's argument concerning rescission is inapplicable, if, in accord with the trial court's views, there never existed a meeting of the minds, or agreement, between plaintiff and the defendants. Counsel recognizes that resolution of an issue of fact was necessary to determining whether or not there was such an agreement. As plaintiff introduced evidence in rebuttal, after demurring to defendants' evidence, and thereafter interposed no challenge to the sufficiency of the evidence, as a whole, to prove such defense, there is no predicate in the record for our review, or weighing, of the evidence. When such a situation exists in an action of legal cognizance, that is triable by a jury, but where jury trial has been waived, the trial court's judgment, as to issues of fact, is affirmed, if there is any competent evidence reasonably tending to support it. For rules governing our review of such actions, as distinguished from actions of equitable cognizance, see Wilcox Oil Co. v. Lawson, Okl., 301 P.2d 686, and Terry v. Water Improvement Dist. No. 5, 179 Okl. 106, 64 P.2d 904, and compare with the statement in Irion v. Nelson, 207 Okl. 243, 249 P.2d 107, at pages 108 and 109.

■ As already indicated, our examination of the record has revealed competent evidence reasonably tending to support the trial judge's view that there was no enforceable agreement, or contract, between plaintiff and defendants. Our examination reveals ample evidence to support the conclusion that if there was any intention, agreement, or consent, by defendants to purchase the two 1960 model air conditioners

from plaintiff it was conditioned, or contingent, upon acceptance and discharge of their insurance claim on a "total loss" basis. While defendants may have been persuaded to believe, or have been reasonably certain, that this contingency would occur, as we have seen, it did not; and we have no proper ground and/or predicate for reversing the trial court's refusal to hold defendants liable upon the alleged unconditional contract of purchase, plaintiff sued upon.

■ Under its second and last "Proposition", plaintiff complains of defendants' having been awarded recovery against her of the sum of $125.00 upon their counterclaim. In reviewing this feature of the trial court's judgment, we must be governed here, as in the determination already made, by the "competent evidence" rule above referred to. In Shultz v. Dillard, Okl., 262 P.2d 139, we held, among other things, that where plaintiff, after demurring to evidence in support of a defendant's cross-petition, puts on further evidence in rebuttal, he thereby waives the demurrer. Plaintiff seems to be of the view that the one-hundred and twenty-five dollar award against her was excessive in view of her offer to prove that defendants' one-ton air conditioner, which she was unable to return to them, was sold by her shop for the sum of only $35.00 (which plaintiff's shop received for property not belonging to it). It will be noticed that, in carrying out the trial court's judgment, if this $35.00 is deducted from defendants' money judgment, plaintiff will need to expend only $90.00 of her own funds to satisfy said judgment. While, on the basis of some of the evidence, it appears that the trial court might have determined that the air conditioner plaintiff's shop sold was worth less than $125.00, or even less than $90.00 (and we cannot be certain that the value of said appliance was the only item of defendants' damages that said court took into consideration) defense counsel point out that, when the purchase price, make, model, and short length of service of said air conditioner is calculated, and the approximate eigthy-eight-dollar cost of

putting it in good repair, together with a reasonable sum for depreciation (based upon representations made to the court, concerning the market price of other used air conditioners) is deducted from said price, the questioned award cannot be said to be without competent evidence reasonably tending to support it. We agree.

As, in view of the foregoing, plaintiff's arguments have failed to demonstrate sufficient ground for reversing, or modifying, the judgment appealed from, it is hereby affirmed.

WILLIAMS, C. J., and WELCH, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.