HEPP BROTHERS, INC., an Oklahoma Corporation, Plaintiff in Error,

v.

Charles EVANS and Joyce Evans, Defendants in Error.

No. 41428.

Supreme Court of Oklahoma.

Nov. 15, 1966.

Tom S. Williams, Charles E. Dierker, Oklahoma City, for plaintiff in error.

William H. Henderson, Oklahoma City, for defendants in error.

BLACKBIRD, Justice.

This appeal involves an action for damages in the amount of $581.88 for breach of warranty on a floor covering consisting of Kentile "Pearl Inlaid" vinyl tile squares, or blocks, plaintiff in error, hereinafter referred to as defendant, sold and installed during August or September, 1960, in the kitchen and den of a new home being built in southern Oklahoma City for the defendants in error, hereinafter referred to either by name or as plaintiffs.

Plaintiffs did not file their petition in this action until August 29, 1963, but they alleged therein, among other things, that "* * * the tile blocks commenced 'popping loose' from the floor * * *" in June, 1962, "and thereafter all of the aforesaid tile blocks came loose from the floor."

In defendant's answer, it plead that the action was barred by the three-year limitation period prescribed for expressed, or implied, contracts "not in writing", by Tit. 12 O.S.1961, sec. 95 "Second". Defendant's answer also contained a general denial and the following more specific allegations:

"* * * defendant states that if the tile sold did not adhere there was no warranty, expressed or implied, that it would adhere to the floor longer than a reasonable time, which would in no event exceed one year from the time it was laid.

"For further answer defendant states that if the tile floor did not adhere the cause was the fault of plaintiffs in not providing and maintaining a proper surface under said tile.

"* * *."

At the pre-trial conference, the parties waived trial by jury. At the subsequent trial before the court, after plaintiffs had introduced their evidence, defendant demurred thereto, but did not challenge the sufficiency of the evidence as a whole at the close of the trial and before the cause was submitted to the court for judgment. Thereafter, the court rendered judgment in plaintiffs' favor in the amount sued for, with interest and costs. In said judgment, the court made the following finding, among others:

"And the court being fully advised, on consideration, finds that the defense of the statute of limitations is not applicable because it did not run from the time the material was installed, but ran from the time the defects therein were discovered by the plaintiffs, * * *

"* * *."

After the overruling of defendant's motion for a new trial, it perfected the present appeal.

All of defendant's arguments for reversal are advanced under the following propositions:

I "The statute of limitations had run on * * * (Plaintiffs') claim.

II "There was no evidence to support the conclusion of the trial court that defendant breached an implied warranty with reference to the tile."

After examining the record in the light of defendant's arguments under its Proposition II, we observe that the only issue of fact preserved in the trial court, and submitted to this court in said Proposition, does not invoke a weighing of the evidence since defendant failed to challenge its sufficiency, as a whole, before the cause was submitted to the trial court for judgment. As said in Gentry v. Smith, Okl., 373 P.2d 71, 74:

"* * *

"When such a situation exists in an action of legal cognizance that is triable by a jury, but where jury trial has been waived, the trial court's judgment, as to issues of fact, is affirmed if there is any competent evidence reasonably tending to support it. * * *."

And, in determining whether such a judgment has the quantum of support prescribed by the above quoted rule, we must take into consideration "every reasonable inference deducible" from the competent evidence reasonably tending to support it. Burke v. Bennett Drilling Co., Okl., 371 P.2d 477.

Before dealing with the arguments, in the light of the above cited rule, it is appropriate to set forth some of the undisputed facts which form the background of this controversy, and some of the evidence introduced at the trial.

According to the evidence, before plaintiffs' new home's construction reached the stage that it was ready for selection of floor covering for its kitchen and den floors, Mr. Malear, the "builder" or contractor on the job, suggested to plaintiffs that the defendant company be contacted for such covering. Pursuant to this suggestion and/or recommendation, plaintiffs went to defendant's place of business in early August, 1960, and consulted Mr. William Burl Hepp, defendant's president and "active manager", concerning the matter. Upon Mr. Hepp's statement that it has a "lifetime guarantee", was the "best" one defendant handled, "was as good as anybody's", and that he would recommend it "to put on any floor", plaintiffs selected the Kentile "Pearl Inlaid" vinyl tile, and Hepp agreed to install it in the kitchen and den of their new home for a total price, whose amount would depend upon the size of those rooms and the number of tile squares, or blocks, needed to cover their floors. Thereafter, defendant engaged a Mr. Verlon Whaley to install the tile, and Mr. Whaley went to plaintiffs' new home for the purpose of measuring the two rooms' floors and making preparation for the tile's installation there. On Whaley's first visit to the construction site, he found that the concrete slab floor, upon which the vinyl tile was to be laid, had a hump, or raised place, in it. Whaley reported this to Mr. Hepp and apprised him that, in order for the tiled floor to "look right" when completed, he was causing the builder to sand down this high place on the concrete.

Thereafter, when Whaley had returned to the new home to see that the floor had been leveled satisfactorily, he arranged to lay the tile on a week end, a few days later. During the time that elapsed between his said inspection of the concrete floor and his installation of the tile theron, Whaley returned to defendant's store, picked up the tile and paste, cement, or adhesive, that defendant had for the job, and completed installation of the tile on schedule. Thereafter, Mr. Hepp telephoned plaintiffs to verify the fact that Whaley had completed the job, obtained their acceptance of it, paid Whaley $150.00 out of defendant's funds for the labor involved, thereafter billed plaintiffs in the lump sum of $581.88 for the completed job, and plaintiffs remitted that amount to defendant, in full payment, about the middle of September, 1960.

Thereafter, in June, 1962, plaintiffs noticed that the tile was beginning to come loose in various places where it had been laid and Mr. Hepp was apprised of this by telephone. On behalf of defendant, Mr. Hepp denied responsibility for the tile's coming loose, and told plaintiffs that it was Mr. Whaley's fault. Plaintiffs then contacted Mr. Whaley and he told them it was the tile's fault. Thereafter, plaintiffs contacted a Mr. Trappe, who came to their home and replaced the loose tile blocks by cementing, in their place, some unused ones left over from the original job. Later, in 1962, when plaintiffs were preparing for a Christmas party in their home, others of the original tile blocks had come loose, and Mr. Hepp was again telephoned. This time Mr. Hepp suggested that plaintiffs contact a Mr. Hadley, office manager of the O'Neil Wholesale Flooring Company, Kentile's exclusive Oklahoma distributor and wholesaler. Whether the initial contact with Mr. Hadley was made by plaintiffs, or by defendant, is not clear from the evidence, but it is indicated that Hadley then relayed plaintiffs' complaint to Mr. Ellis Hall, Kentile's manufacturer's representative residing in Oklahoma City, Mr. Hall then went to plaintiffs' home, saw that

"the majority" of the tile was loose and part of it was "curling", and found, according to his testimony, that "the tile had been installed with a clay type of adhesive". Mr. Hall further testified that the adhesive that should have been used, according to manufacturer Kentile's specifications, was "Kentile Epoxy No. 9". This witness' testimony continued as follows:

"Q And what did you find as to this installation being guaranteed by the Kentile Company?

"A It wasn't.

"Q Why was it not, sir?

"A It was contrary to our specifications.

"Q Was it because it had been laid with the wrong adhesive?

"A To the best of my knowledge, yes."

This testimony is consistent with a letter dated May 15, 1963, addressed to defendant by Mr. Hadley for his employer, O'Neil Wholesale Flooring, Inc., a copy of which was introduced as plaintiffs' Exhibit "G". The body of said letter is as follows:

"We have a sample of the tile taken from the floor of the residence of the Evans home and Kentile gives us the following report.

"This was laid on a concrete floor. The floor was primed with either #1 or #4 adhesive and then the tile was laid with #2 cement.

"This type of installation is not guaranteed by Kentile.

"It should have been installed with Epoxy #9 cement.

"The only guarantee Kentile will stand behind is when the tile is properly installed.

"Kentile has closed their files on this complaint."

Mr. Hall further testified, in substance, that it is impossible to tell how long "a floor will last". In referring to the kind of tile plaintiffs purchased, this witness further testified that, as far as his Company is concerned, " * * * it's guaranteed for life against the tile wearing out or the pattern wearing off." Hadley testified that defendant has been a customer of the O'Neil Company since it started business in May, 1959; that defendant buys Kentile exclusively from it; and that the reason the Kentile Company keeps a local representative, like Mr. Hall, in Oklahoma to work with dealers, customers, and architects is "not necessarily" because their tile carries such a "high guarantee" but because it is "a very fine" and "a nationally known" product.

Mr. Hall testified that this vinyl tile "has been on the market approximately ten years or longer" and that for at least the four years he had been employed by Kentile it had specified its Epoxy No. 9 cement for installing said tile in written specifications that are distributed to its wholesalers with its product. This witness further testified that if that cement, or adhesive, had been used on the plaintiffs' job, his Company's "guarantee would have applied."

Plaintiffs further established by the witness Hadley, that his employer, the distributor, O'Neil Company, furnishes Kentile's written specifications to its customers for such tile, and that defendant had likewise been furnished these specifications. Hadley further testified, in substance, that when his Company gets an order for such merchandise it makes a specific recommendation as to the type of adhesive to be used, and thus adds adhesive sales to its sales of tile.

 Although Mr. Hepp took the stand in his Company's defense, and attempted to explain how moisture originating in a swimming pool 30 or 40 feet away from the installed tile, could have permeated up through the concrete slab floor on which it was laid, and caused the tile to come loose, as hereinbefore indicated, according to Mr. Whaley, defendant, through its president, Mr. Hepp, knew that the tile was being installed on that kind of a floor; and there is abundant and positive evidence that the tile's failure to stay adhered to the floor was due to the type of adhesive that

was used. We cannot say that there was no competent evidence from which the trier of facts could have reasonably inferred that an implied warranty of suitability and fitness inhered in the oral agreement plaintiffs had with defendant to install, as well as to furnish, the tile, and that defendant breached this warranty. There can be no question but that where the sale of materials, or equipment, includes its installation, such a warranty may accompany the sale. For examples of such sales see Burns Construction Co. v. Bilbo, Okl., 370 P.2d 913, Simonz v. Brockman, 249 Wis. 50, 23 N.W.2d 464, 24 N.W.2d 409, and Loveland v. Aymett's Auto Arcade, Inc., 121 Conn. 231, 184 A. 376.

We next consider defendant's contention, under its Proposition I, that this action was barred under Sec. 95 "Second", supra, because plaintiffs did not commence it (according to defendant's evidence) until more than three years after the tile was installed. As will be remembered, the trial court held that the limitation period ran—not from the time of the tile's installation—but from the time "the defects therein (presumably in its installation) were discovered." We think the trial court's decision on this issue was correct. While there are expressions (see the discussions concerning Felt v. Reynolds Rotary Fruit Evaporating Co., 52 Mich. 602, 18 N.W. 378, Louisville Silo & Tank Co. v. Thweatt, 174 Ark. 437, 295 S.W. 710, and two other cases in the Annotation at 75 A.L.R. 1086, 1092) upon the basis of which it might conceivably be argued that the running of the limitation period was tolled until the cause of the tile's coming loose was established (at least to Kentile's and O'Neil Wholesale Floor Company's satisfaction) in May, 1963, or that said period did not start to run until this condition was discovered, because the failure of the adhesive was in the nature of a latent defect (see 46 Am.Jur., "Sales", sec. 379) we think the sounder rationale for holding that causes of action for breach of warranty of suitability and fitness of installa-

tions, such as the one here involved, do not necessarily accrue at the time of the installation, is that such warranty is prospective in nature. See Aced v. Hobbs-Sesach Plumbing Co., 55 Cal.2d 573, 12 Cal.Rptr. 257, 360 P.2d 897, 903, and the cases there cited. We think the situation as to the tile adhesive in the present case, is analogous to that of the tubing in the Aced case in which the court said, among other things, 12 Cal.Rptr. at page 263, 360 P.2d at page 903:

> "A warranty that the tubing was of a quality reasonably permitting its use in a radiant heating system would include prospective warranty that the tubing would not, within a reasonable period of time, corrode and leak. It obviously could be determined that a reasonable time had not expired when the leaks were first noticed, about a year after the heating system had been installed.
> "* * *."

We therefore reject, as unsound and inapplicable, the authorities cited in defendant's brief to the contrary effect and tenor. The trial judge, in the present case, was obviously of the opinion that the tile involved had not adhered to the floor of plaintiffs' kitchen and den a reasonable time, when it began coming loose in less than two years after it was installed. At least such a finding may be deemed to inhere in his judgment, and such finding is amply supported by the evidence. In view of the above authorities and the record in this case, the trial court's decision that the applicable period of limitations had not expired when plaintiffs commenced this action less than two years after that date, cannot be held to be without competent evidence reasonably tending to support it, or to be contrary to law.

In accord with the foregoing, the judgment of the trial court is hereby affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, IRWIN, BERRY and LAVENDER, JJ., concur.

HODGES, J., concurs in result.