The PENNSYLVANIA FIRE INSURANCE COMPANY, (PHILADELPHIA),
Plaintiff in Error,

v.

Kenneth FLAMING, Defendant in Error.

No. 41300.

Supreme Court of Oklahoma.

Feb. 21, 1967.

Rehearing Denied March 21, 1967.

Savage, Gibson, Benefield & Shelton, by Jack R. Lawrence, Oklahoma City, for plaintiff in error.

Fitzgerald & Houston, by Clee Fitzgerald, Stillwater, for defendant in error.

PER CURIAM:

This is an action to recover upon an insurance policy which insured against losses caused by employee dishonesty to the extent of $2,500.00 per employee.

Kenneth Flaming (plaintiff below) operated a supermarket in Stillwater, Oklahoma. On October 26, 1962, one of his employees, A, was arrested outside the store with about $68.00 worth of cigarettes from the store in his possession. A had been in plaintiff's employ since May, 1962. Pleading guilty to grand larceny, A was sentenced to eighteen months in the state penitentiary.

Meanwhile, plaintiff reported his loss to the Pennsylvania Fire Insurance Company (defendant below) and filed a proof of loss which exceeded the policy limit. Defendant refused to accept the proof of loss and plaintiff then brought this action in the District Court of Payne County to recover under the fidelity policy an alleged loss of $1,901.44.

Defendant, through its opening statement at trial and in its brief, conceded liability to the extent of $269.43. In support of his claim in excess of that amount, plaintiff presented the following evidence to the jury:

1. *Testimony by plaintiff:*

(a) That A offered him $1,500.00 if he would not file charges against him;

(b) That defendant's soliciting agent, who died before the trial, told plaintiff that defendant would pay off the claim to the extent of $2,500.00;

2. *Testimony by A, the convicted employee:*

(a) That he offered plaintiff $1,500.00 for the merchandise taken;

(b) That he had on other occasions taken cigarettes from the store;

(c) That he had at some time or times previous to his arrest taken articles from the store and given them to someone to take to a certain cafe in Guthrie;

3. *Testimony by David Swank, Assistant County Attorney at the time of A's arrest:*

(a) That A had variously admitted to him that he had stolen from plaintiff "three times", "four times", and "several times;"

(b) That A had admitted to him that he had offered plaintiff $1,500.00;

4. *Admission of the following records from the joint savings account of A and his wife:*

(a) deposit records from August 31, 1957 to March 15, 1962, showing a maximum deposit of $118.50 and a maximum balance of $417.48;

(b) deposit records during A's employment by plaintiff showing balance of $261.96 on June 19, 1962; total deposits of $1,510.62; a balance of $1,772.58 on October 17; and a withdrawal of $1,762.58 on October 30, 1962.

Defendant called no witnesses but its counsel elicited on cross-examination:

(1) testimony by A that his larger-than-usual savings deposits were due to gambling winnings, that he had held two jobs in 1962, and that his wife also was employed in 1962;

(2) testimony by plaintiff that A had earned $85.00 a week from plaintiff.

The jury returned a verdict for the plaintiff in the amount of $1,500.00 and judgment was rendered thereon. Defendant appeals from the judgment on this verdict on the grounds that the damages in excess of $269.43 were speculative and that the trial court erred in admitting into evidence the savings account records of A and his wife and the representations by the defendant's soliciting agent.

 In an action to recover for losses under a fidelity insurance policy, the insured need not prove the amount of his loss beyond a reasonable doubt but only by a preponderance of the evidence. 46 C.J.S. Insurance § 1359 at 564. Neither the terms of the policy in question nor the law of evidence preclude reliance upon circumstantial evidence. Since an exclusionary clause in the policy prohibited the use of inventory or profit and loss computations to prove loss, plaintiff relied upon "evidence wholly apart from such computations," and circumstantial evidence was a reasonable and appropriate means of proof.

 As a general rule, contracts of fidelity insurance should be liberally construed to accomplish the purpose of indemnity for which they are made. National Surety Co. v. Gallemore, 99 Okl. 250, 226 P. 551. Thus, when a loss covered by the policy is clearly established, the plaintiff should not be required to prove the amount of his loss with "mathematical accuracy". Leader Clothing Co. v. Fidelity & Casualty Co., (10th Cir. 1956), 237 F.2d 7. In the factual setting of the present case, it is difficult to imagine what further proof, exclusive of accounting computations, plaintiff could reasonably have produced. Thieves normally do not keep accurate records of their thefts. Nor is it to be anticipated that a dishonest employee will

have in his possession at the time of arrest all of the goods stolen from his employer. Under the circumstances, therefore, it is enough if there is a "reasonable inference" as to the extent of the loss. Leader Clothing Co. v. Fidelity & Casualty Co., supra.

In Prior Lake State Bank v. National Surety Corp., 248 Minn. 383, 80 N.W.2d 612, the Minnesota Court held that a loss to an insured under an employers' surety bond due to dishonesty "can be established by circumstantial evidence" and that "such evidence need not exclude every other reasonable conclusion". Where, as here, the amount of loss is difficult of ascertainment, equity and justice will lighten the burden of proof resting on the wronged person to establish the exact amount of the loss. Leader Clothing Co. v. Fidelity & Casualty Co., supra.

■ The trial court admitted, over defendant's objection, the joint savings account records of A and his wife. The defendant contends on appeal that admission of such records was prejudicial error. While the question before this Court is a novel one, it appears significant that in the criminal cases, with a normally higher evidentiary standard than civil cases, evidence of defendant's financial status is admitted to prove theft. See 91 A.L.R.2d 1046; United States v. Jackskion, (2d Cir. 1939), 102 F.2d 683, 123 A.L.R. 116; Hilyard v. State, 90 Okl.Cr. 435, 214 P.2d 953, 28 A.L.R.2d 961, (reversed on other grounds). Such evidence is not used to prove the extent of theft because proof of exact amounts is not ordinarily required in a criminal case (except as necessary to establish *grand* as against *petty* larceny). We find no authority for refusing to admit records of financial status as evidence of theft or amount of theft in a civil case.

■ One reasonable inference from the savings account records was that the additions to the account reflected the amount of A's thefts. But the record indicates that the jury had before it such evidence as would have supported other inferences as to the source of the funds. There was testimony that A held two jobs, that his wife was employed and that he had acquired his savings through gambling. The jury had ample opportunity to observe demeanor of witnesses and to assess their credibility. It was a proper jury function to draw its own reasonable inference as among alternative explanations. The defendant was not prejudiced thereby. This Court has recognized that the jury may accept circumstantial evidence on one side and reject positive testimony presented on the same point by the other side, when there is proof of circumstances reasonably tending to establish the facts and support the conclusion reached. Otis Elevator Co. v. Melott, Okl., 281 P.2d 408, 414. We hold, therefore, that the bank records of the savings account were properly admitted as evidence tending to prove the amount of loss. We do not necessarily hold that such records were sufficient in themselves to warrant a jury verdict for the plaintiff, but that the jury could properly consider the financial status of the convicted employee along with the other evidence.

■ It is well established that where the evidence is "reasonably sufficient" to show a loss, a "verdict for the plaintiff will not be disturbed". 21 Appleman, Insurance Law & Practice, Section 12774 at 738–39. See Terry v. Water Improvement District No. 5 of Tulsa County, 179 Okl. 106, 64 P.2d 904. In the case at bar, plaintiff not only showed A's higher deposit record during his period in plaintiff's employ, but there was undisputed testimony that A had offered to pay the plaintiff $1,500.00 not to file charges against him, that he had taken cigarettes on other occasions, that he had given articles to someone to take to Guthrie, and that he had stolen from the plaintiff at other times. While no one of these facts alone would establish the amount of the plaintiff's loss, and all of them combined would not warrant a directed verdict, all of the facts taken together justified submitting the case to a jury.

We find it unnecessary to determine whether the trial court erred in permitting

the plaintiff to testify as to what his insurance agent told him about his claimed loss, but will assume that such evidence was inadmissible.

This Court has held that before a cause should be retried or reversed on account of the admission of incompetent evidence, it must affirmatively appear that admission of such evidence· resulted in prejudice to the objecting party. Bentley v. Melton, Okl., 316 P.2d 591. Title 12 O.S. 1961, Sec. 78, provides that the court, in every stage of the action, must disregard any error in a proceeding which does not affect the substantial rights of the adverse party; and no judgment will be reversed or affected by reason of such error. It is not enough for the defendant to prove that the statements of the insurance agent were incompetent as evidence; it must go further to show that admission of such evidence was prejudicial. Marten v. Credit Adjustment Service, Inc., Okl., 349 P.2d 742.

In the case at bar, the jury had before it sufficient competent evidence to establish a loss in the amount of the verdict. Moreover, there is no indication that the jury relied upon evidence of the insurance agent's representations in reaching its verdict. On the contrary, it appears that their conclusion found abundant support in the other competent evidence submitted by the plaintiff.

We have held that it is only where alleged errors in ruling on the evidence cause a miscarriage of justice or constitute a substantial violation of a constitutional or statutory right that a judgment based on a jury's verdict will be disturbed. Continental Oil Co. v. Ryan, Okl., 392 P.2d 492. Therefore, if we assume the admission of the statements of the soliciting agent in the case at bar was error, such error was harmless and does not warrant a reversal.

Judgment affirmed.

All the Justices concur. ..

. The Court acknowledges the services of GERALD KLEIN, who with the aid and counsel of T. AUSTIN GAVIN and GARRETT LOGAN, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The CHIEF JUSTICE then assigned the case to Vice Chief Justice IRWIN, for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.